IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAZZMOND HAWTHORNE,

      Plaintiff,

v.                                   Civil Action No. 3:15cv572

BJ'S WHOLESALE CLUB, *et al.*,

      Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Defendants BJ's Wholesale Club, Chris Chase, and Brandon Jester's (collectively, "BJ's") joint Motions to Compel Arbitration and Dismiss Proceedings. (ECF Nos. 11, 12.) Plaintiff Dazzmond Hawthorne responded to BJ's Motions. (ECF No. 17.) BJ's did not file a reply, and the time to do so has expired. Accordingly, the motions are ripe for adjudication. The Court dispenses with oral argument because the materials before the Court adequately present the facts and legal contentions necessary to resolve BJ's motions. The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1331.[1]

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Hawthorne cites no specific federal law in his Complaint. However, he attaches to his Complaint a "Charge of Discrimination" submitted to the Equal Employment Opportunity Commission ("EEOC"). (Compl. Ex. 3 ("Discrim. Charge"), ECF No. 2-2.) In the Charge of Discrimination, Hawthorne alleges that BJ's discriminated against him on account of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* (*Id.* at 1.) On August 14, 2015, the EEOC issued to Hawthorne a "Notice of Right to Sue." (Compl. Ex. 4, ECF No. 2-3.) The Notice of Right to Sue grants Hawthorne the right to bring his Title VII claim against BJ's in "federal or state court within 90 days of [the] receipt of [the] notice." (*Id.* at 1 (emphasis removed).)

While Hawthorne filed the Complaint well *after* 90 days of the *date* of the Notice of Right to Sue, the Court has a duty to construe *pro se* filings liberally. *Steele v. Capital One Home Loans, LLC*, 594 F. App'x 215, 216 (4th Cir. 2015) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Liberally construing Hawthorne's Complaint and his attachment of the Charge of Discrimination and the Notice of Right to Sue, the Court finds that Hawthorne pursues claims

For the reasons that follow, the Court will grant BJ's Motion to Compel Arbitration (ECF No. 11) and BJ's Motion to Dismiss (ECF No. 12). The Court will dismiss the action without prejudice.

## I. Procedural and Factual Background

### A.    Procedural History

On September 22, 2015, Hawthorne filed a Complaint in this Court. (ECF No. 2.) Hawthorne submitted his Complaint in narrative form, lacking enumerated paragraphs or citations to any law. Hawthorne specifically states that he brings suit against BJ's for "wrongful termination, pain and suffering, defamation of character, and false allegations."[2]  (Compl. 3.) Liberally construing Hawthorne's *pro se* Complaint, the Court finds he attempts to state claims for defamation, wrongful termination, and racially discriminatory employment practices, in violation of Title VII. (*See supra* note 1.) On January 13, 2015, BJ's filed the instant Motions to Compel Arbitration and Dismiss the Proceedings. (ECF Nos. 11, 12.) BJ's asserts that Hawthorne's claims are subject to an agreement to submit all employment-related claims to binding arbitration.

---

for racial discrimination under Title VII. This confers subject matter jurisdiction over this case in the Court.

[2] The Court does not recognize causes of action for "false allegations" or "pain and suffering." A claim of "false allegations" would necessarily be subsumed by a claim for defamation. *See Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013) ("The elements of defamation are '(1) publication of (2) an actionable statement with (3) the requisite intent. To be actionable, the statement must be both false and defamatory.'" (quoting *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005))). Pain and suffering, on the other hand, constitute a form of damages, not a cause of action. Plaintiffs may only recover pain and suffering damages after prevailing on the merits of a valid cause of action.

**B.    Hawthorne's Work for and Termination from BJ's**

On or about December 2, 2013, BJ's hired Hawthorne to work in its tire bay.[3]

Hawthorne alleges that two coworkers, Shiante Crumbley and Ashley Cooper, informed him in

June 2014 that another coworker, Brandon Jester, used vulgar and racially derogatory language

to insult him on Facebook. Hawthorne states that he confronted Jester about the comments

during Hawthorne's next shift. Hawthorne avers that management then began scheduling Jester

to work with Hawthorne more frequently than had occurred in the past. Hawthorne states that he

felt as if Jester and BJ's management wanted "something serious to occur" between Hawthorne

and Jester. (Compl. 1.) Hawthorne alleges that he brought these concerns to his immediate

manager, but was told "to think nothing of it, and just continue to do [his] job." (*Id.*) Hawthorne

states that no other incidents occurred between June and September of 2014.

On or about September 13, 2014, Hawthorne alleges that Crumbley contacted him and

told him to "watch [his] back" because she heard Hawthorne "was getting" something when he

returned to work. (*Id.*) During Hawthorne's next shift, on September 20, 2014, Chris Chase, the

store manager, placed Hawthorne on suspension, in part for making threatening comments to

other employees. Hawthorne avers that Chase refused to state more specific grounds for the

suspension because of a "right-to-know" law. (*Id.*) On September 29, 2014, Hawthorne met

with two other BJ's representatives. The two representatives ultimately terminated Hawthorne

due to a threat against Jester.

---

[3] The record conflicts as to the exact date, but December 2, 2013 appears to be correct.
(*See* Mot. Ex. 1 ("Loudon Decl."), at 23 ("New Hire Ackn. Arb. Agreement"), ECF No. 13-1
(hiring paperwork dated December 2, 2013).) *But see* Discrim. Charge at 1 (stating Hawthorne
was hired on or about December 4, 2013).)

C.      **The Arbitration Agreement**

In April and May of 2013, BJ's adopted the Open Door Solutions program to serve as a four-step dispute resolution system. Steps one, two, and three of the Open Door Solutions program attempt to resolve employment-related disputes internally. Step four of the Open Door Solutions program requires the parties to submit to binding arbitration. At the time of its implementation, BJ's allowed each of its employees to opt out of the Open Door Solutions' Arbitration Agreement (the "Arbitration Agreement"). Since its implementation, BJ's informs all new employees about the Arbitration Agreement and gives them an opportunity to opt out.

The parties agree that Hawthorne signed a "New Hire Acknowledgement and Agreement" (the "Acknowledgement") upon being hired. (New Hire Ackn. Arb. Agreement at 1; Pl.'s Resp. at 1.) The Acknowledgment notes that Hawthorne received and reviewed a copy of BJ's Open Door Solutions program materials. The Acknowledgement further states:

> In particular, I confirm my understanding and agreement with BJ's that any employment dispute that is not resolved informally by BJ's and me in Steps 1 through 3 of the Open Door Solutions program will be resolved by Step 4, final and binding arbitration, in accordance with the Program.

> I understand and agree that I am giving up and waiving my right to a jury trial or court trial including my right to participate in class action litigation or other representation or collective actions.

(New Hire Ackn. Arb. Agreement 1.) Article 2 of the Open Door Solutions Rules and Procedures provides that "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state[,] or local decisional or statutory law ("Employment-Related Claims"), shall be resolved exclusively by final and binding arbitration." (Loudon Decl. at 8 ("Arb. Rules and Proc."), art. 2, ECF No. 13-1.) Article 2 then lists a number of examples of "Employment-Related

4

Claims," expressly including defamation, wrongful termination, and claims arising under Title VII of the Civil Rights Act of 1964. (*Id.*)

The "Mutual Agreement to Arbitrate Claims" further clarifies the Arbitration Agreement in plain language:

> This Agreement applies to any dispute, past, present[,] or future that I have against BJ's, or that BJ's has against me, which could have been resolved in a court of law, arising out of or relating to any aspect of my job at BJ's, including but not limited to: my application for a job, my work at BJ's, or my separation from BJ's. I understand that this Agreement continues after my employment at BJ's ends. I understand that this Agreement does not change in any way my status as an "at will" employee of BJ's.

(Loudon Decl. at 5 ("Mutual Agreement to Arb." ¶ 1).)

New BJ's employees have an opportunity to opt out of the Arbitration Agreement by completing an opt-out form and returning it to the BJ's Office of Open Door Solutions within 30 days. Neither party contests that Hawthorne did not opt out of the Arbitration Agreement.

## II. Analysis

The Court finds that Hawthorne's claims are subject to binding arbitration pursuant to the Federal Arbitration Act ("FAA")[4] because: (1) the Arbitration Agreement pertains to current and former employees; (2) Hawthorne makes no showing of unconscionability;[5] and, (3) any breach by BJ's does not render the Arbitration Agreement unenforceable.

---

[4] 9 U.S.C. § 1 *et seq.*

[5] Hawthorne states that he signed the New Hire Acknowledgement and Agreement without having the meaning or significance of it explained to him. He further contends that he was not afforded an opportunity to review the Arbitration Agreement and its accompanying materials until returning home. Lastly, he states that at least some of the materials explaining the Arbitration Agreement were received in the mail after he had already signed the New Hire Acknowledgement and Agreement.

Although Hawthorne does not use the word "unconscionable," the Court interprets these assertions as an argument that the Arbitration Agreement is unconscionable. *See Steele*, 594 F. App'x at 216 (citing *Erickson*, 551 U.S. at 94)).

## A.    The Federal Arbitration Act

Congress passed the FAA "'to reverse the longstanding judicial hostility to arbitration

agreements . . . and to place arbitration agreements upon the same footing as other contracts.'"

*Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/*

*Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (alteration in original)).  The FAA provides that a

written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2

limits the scope of the FAA to written contracts involving commerce.  *Id.*  "The effect of th[is]

section is to create a body of federal substantive law of arbitrability, applicable to any arbitration

agreement within the coverage of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 24 (1983).

Once a court determines that the parties entered into a written agreement to arbitrate the

underlying dispute, Section 4 directs courts to compel arbitration if necessary.  9 U.S.C. § 4.  The

FAA gives district courts no discretion to do otherwise:

> By its terms, the Act leaves no place for the exercise of discretion by a district
> court, but instead mandates that district courts *shall* direct the parties to proceed to
> arbitration on issues as to which an arbitration agreement has been signed.  Thus,
> insofar as the language of the Act guides [the] disposition of [a] case, we would
> conclude that agreements to arbitrate must be enforced, absent a ground for
> revocation of the contractual agreement.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4);

*see Hightower v. GARI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001); *Sydnor v. Conseco Fin.*

*Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001).

**B.    BJ's Motion to Compel Arbitration**

To compel arbitration under the FAA, BJ's must demonstrate:

(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and[,] (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.

*Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (citing *Rota–*

*McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)); *accord Great*

*Am. Ins. Co. v. Hinkle Contracting Corp.*, 497 F. App'x 348, 352 (4th Cir. 2012) (citing *Adkins*

*v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)).[6] Hawthorne does not contest the

existence of a dispute between the parties, the relationship of the transaction to interstate or

foreign commerce, or his failure, neglect, or refusal to arbitrate the dispute. (Pl.'s Resp. at 1.)

Hawthorne disputes only the second element, denying that a valid contract to arbitrate the

dispute exists.[7] Specifically, he avers that: (1) the Arbitration Agreement pertains only to current

employees; (2) the Agreement was unconscionable; and, (3) BJ's breached the Agreement.

(Compl. 2.)

---

[6] Courts within the United States District Court for the Eastern District of Virginia have utilized two different tests for compelling arbitration under the FAA. *Compare Galloway*, 819 F.3d at 84, *with Garrett v. Margolis, Pritzker, Epstein & Blatt, P.A.*, 861 F. Supp. 2d 724, 727 (E.D. Va. 2012) ("The Court should consider three factors in determining whether to enforce an arbitration agreement: (1) whether the parties consented to arbitration of their claim; (2) whether Congress intended to preclude arbitration in the circumstances of the case; and (3) whether arbitration provides a means to vindicate the claim that the plaintiffs have brought." (citing *Koridze v. Fannie Mae Corp.*, 593 F. Supp. 2d 863, 867 (E.D. Va. 2009))). This Court uses the test utilized by the United States Court of Appeals for the Fourth Circuit in 2016. In any event, the disposition of these motions would remain the same under either test.

[7] Hawthorne does not dispute that the subject matter of his claims falls within the scope of the Arbitration Agreement. Accordingly, the Court need not examine the scope of the Arbitration Agreement. Even were the Court to review the Arbitration Agreement, it could find that the Arbitration Agreement expressly covers claims for defamation, wrongful discharge, and Title VII violations. (Arb. Rules and Proc., art. 2.)

Courts evaluate a motion to compel arbitration using the following precepts:

> While the Supreme Court has acknowledged a "liberal federal policy favoring arbitration," . . . it has also consistently held that [Section] 2 of the FAA reflects the "fundamental principle that arbitration is a matter of contract[ ]" . . . . Thus a court may order arbitration only when it "is satisfied that the parties agreed to arbitrate." . . . And the question of whether the parties agreed to arbitrate is resolved by application of state contract law.

*Craddock v. LeClairRyan, P.C.*, No. 3:16cv11, 2016 WL 1464562, at *3 (E.D. Va. Apr. 12, 2016) (omissions and second alteration in original) (quoting *Lorenzo v. Prime Commc'ns., L.P.*, 806 F.3d 777, 781 (4th Cir. 2015)). Therefore, the Court turns to Virginia contract law to determine the validity of the Arbitration Agreement.

### 1.   The Arbitration Agreement Pertains to Former Employees

Under Virginia law, "[c]ontracts are construed as written, without adding terms that were not included by the parties." *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 557 S.E.2d 199, 200 (Va. 2002) (citing *Wilson v. Holyfield*, 313 S.E.2d 396, 398 (Va. 1984)). "Where the terms in a contract are clear and unambiguous the contract is construed according to its plain meaning." *Id.* (citing *Bridgestone/Firestone v. Prince William Square Assocs.*, 463 S.E.2d 661, 664 (Va. 1995); *Ross v. Craw*, 343 S.E.2d 312, 316 (Va. 1986)).

Hawthorne avers that the Arbitration Agreement applies only to current employees of BJ's. However, the "Mutual Agreement to Arbitrate Claims" expressly provides that "this Agreement continues after [his] employment at BJ's ends" and applies to any dispute "arising out of or relating to any aspect of [his] job at BJ's." (Mutual Agreement to Arb. ¶ 1.) The plain meaning of these clear and unambiguous terms shows that the Arbitration Agreement applies to employment-related claims of both current and former employees. *TM Delmarva*, 557 S.E.2d at 200 (citing *Bridgestone/Firestone*, 463 S.E.2d at 664; *Ross*, 343 S.E.2d at 316). Hawthorne does not dispute that he worked for BJ's or that the grounds for each of his allegations originate

8

from his previous employment.  Accordingly, the Court finds that the Arbitration Agreement applies to each of Hawthorne's allegations.

## 2. <u>Hawthorne Makes No Showing of Unconscionability</u>

The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The grounds upon which a party may seek revocation of such an agreement include "fraud, duress, and unconscionability." *Sydnor*, 252 F.3d at 305 (citing 9 U.S.C. § 2).

Virginia has traditionally defined an unconscionable contract as one that no person in his or her "'senses and not under delusion would make on the one hand, and [that] no honest and fair [person] would accept on the other.'" *Lee v. Fairfax Cty. Sch. Board*, 621 F. App'x 761, 762 (4th Cir. 2015) (per curiam) (quoting *Chaplain v. Chaplain*, 682 S.E.2d 108, 113 (Va. App. 2009)).  Unconscionability, a narrow doctrine, requires a showing of inequality "so gross as to shock the conscience." *Id.* (citation omitted); *accord Sydnor*, 252 F.3d at 305 (applying Virginia law).  Unconscionability has both a procedural and a substantive element. *Lee*, 621 F. App'x at 763 (citing *Chaplain*, 682 S.E.2d at 114).  Procedural unconscionability "necessitates inequity and bad faith in 'the accompanying incidents . . . , such as concealments, misrepresentations, undue advantage, oppressions on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like.'" *Id.* (omission in original) (quoting *Chaplain*, 54 S.E.2d at 114).  Substantive unconscionability "requires a 'gross disparity in the value exchanged.'" *Id.* (quoting *Chaplain*, 682 S.E.2d at 113).

This Court concludes that the Arbitration Agreement is neither procedurally nor substantively unconscionable.  This Court recognizes that Hawthorne was likely required to sign

the Acknowledgement along with his other initial employment paperwork. (*See* New Hire Ackn. Arb. Agreement at 1.) At best, taking Hawthorne's allegations as true, he was not afforded an opportunity to read and understand the arbitration information until later that evening. (Pl.'s Resp. at 1.) However, these facts, in and of themselves, do not constitute procedural unconscionability.

First, courts have found that when plaintiffs maintain an option to refuse to sign the form and to work elsewhere instead, as Hawthorne did here, the plaintiffs faced a contract that was not unconscionable. *See Bennett v. Dillard's, Inc.*, 849 F. Supp. 2d 616, 620 (E.D. Va. 2011) (evaluating an arbitration agreement that lacked an opt-out provision but finding that "Dillard's employees had the option to work elsewhere, so the Arbitration Agreement is not a contract of adhesion or otherwise unconscionable."). More importantly, BJ's allowed Hawthorne the opportunity to opt out of the Arbitration Agreement. (Mutual Agreement to Arb. at ¶ 5.) The Arbitration Agreement clearly and unambiguously stated that it did not constitute a condition of employment and that Hawthorne could opt out without any "negative employment action." (*Id.*) This Court finds no procedural "inequity or bad faith" in BJ's Arbitration Agreement. *Lee*, 621 F. App'x at 762. Likewise, this Court finds no evidence that Hawthorne was incapacitated or otherwise unable to appreciate the gravity of the Arbitration Agreement and make a deliberate choice regarding his option to opt out of it. *Id.*

Having reviewed the Arbitration Agreement's rules and procedures, this Court also does not find it to be substantively unconscionable. The Arbitration Agreement allows both parties to participate in the selection process of a neutral arbitrator from the American Arbitration Association. (Arb. Rules and Proc. art. 7.) It provides that the arbitration hearing would be held within 50 miles of Hawthorne's last place of employment, unless the parties agree otherwise.

(*Id.* art. 8.)  Hawthorne has the option to be represented by an attorney.  (*Id.* art. 9.)
Alternatively, if he chooses to represent himself, BJ's agrees not to have an attorney present
during the arbitration hearing.  (*Id.*)  The agreement provides for discovery that mirrors that of a
court, including initial disclosures, interrogatories, and depositions.  (*Id.* art. 10.)  Likewise, the
agreement provides for "Hearing Procedure[s]" that resemble judicial procedures, such as those
governing witnesses, evidence, and dispositive motions.  (*Id.* art. 11.)  BJ's agrees to pay for the
costs of arbitration, with the exception that each party is responsible for filing fees, attorney fees,
and incidental costs.  (*Id.* art. 15)  The agreement empowers the arbitrator to award any relief that
Hawthorne could attain in a courtroom, including damages and attorney fees.  (*Id.* art. 16.)

These provisions provide Hawthorne a fair opportunity to present his claim and receive
just compensation should he prevail on the merits.  Both parties also receive the benefit of a
substantially quicker and cheaper forum to resolve their dispute.  Accordingly, this Court finds
that the value that each party receives from the Arbitration Agreement does not evince such a
"gross disparity" as to render the agreement substantively unconscionable.  *Lee*, 621 F. App'x
at 763.

### 3.     BJ's "Breach" Does Not Render the Arbitration Agreement Unenforceable

Lastly, Hawthorne argues that, even if a binding agreement to arbitrate his claim exists,
BJ's breached the contract by failing to afford Hawthorne an opportunity to use BJ's Open Door
Solutions program in the current dispute.  This argument lacks relevance to the issue before the
Court because it does not attack the validity or enforceability of the Agreement.  Instead, the
parties must address the matter during arbitration.

Under the FAA, the Court must first determine whether the Arbitration Agreement is
enforceable.  *See* 9 U.S.C. § 2.  A written agreement to arbitrate "shall be valid, irrevocable, and

11

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If the Court finds the Arbitration Agreement enforceable, it must compel arbitration of claims within its scope. *Dean Witter Reynolds,* 470 U.S. at 218 (1985) (citing 9 U.S.C. §§ 3, 4).

Hawthorne's claim that BJ's breached the Arbitration Agreement does not constitute a ground that exists "at law or in equity for the revocation of any contract." *Id.* To the contrary, a breach of contract claim presupposes a valid contract. *See Jackson v. Ocwen Loan Serv., LLC,* No. 3:15cv238, 2016 WL 1337263, at *8 (E.D. Va. Mar. 31, 2016) ("To state a claim for breach of contract under Virginia law, a plaintiff must plausibly allege: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of the obligation; and, (3) an injury or harm cause by the defendant's breach." (citing *Filak v. George,* 594 S.E.2d 610, 614 (Va. 2004)).

Hawthorne's final contention thus defeats itself. His claim of breach presupposes a valid agreement to arbitrate. Faced with a valid agreement to arbitrate, this Court must compel arbitration. *Dean Witter Reynolds,* 470 U.S. at 218 (1985) (citing 9 U.S.C. §§ 3, 4). This Court would lack discretion to do otherwise. *Id.* Hawthorne must submit his claim for breach of contract to arbitration.

### B. BJ's Motion to Dismiss

"A court may dismiss or stay a suit that is governed by the FAA." *Chronister v. Marks & Harrison, P.C.,* No. 3:11cv688, 2012 WL 966916, at *2 (E.D. Va. Mar. 21, 2012) (citing 9 U.S.C. § 3; *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709–10 (4th Cir. 2001)). When a party seeks enforcement of an arbitration agreement in district court, the party sufficiently "invoke[s] the full spectrum of remedies under the FAA, including a stay under

[9 U.S.C.] § 3." *Choice Hotels*, 252 F.3d at 710.  However, if a court determines "that all of the issues presented are arbitrable, then it may dismiss the case." *Greenville Hosp. Sys. v. Emp. Welfare Ben. Plan for Emps. of Hazelhurst Mgmt. Co.*, 628 F. App'x 842, 845–46 (4th Cir. 2015) (citing *Choice Hotels*, 252 F.3d at 709–10).  The law remains unsettled as to whether a court should stay or dismiss a case when all claims are subject to arbitration,[8] but no question exists that the Court has the discretion to take either option. *Choice Hotels*, 252 F.3d at 709–10.  Here, because the Court found that all of Hawthorne's claims are arbitrable, (*see supra* note 7; Part II.B.1 ("[T]he Arbitration Agreement applies to each of Hawthorne's allegations."), it will exercise its discretion to dismiss the case without prejudice.

### III.  Conclusion

For the foregoing reasons, the Court will grant BJ's Motion to Compel Arbitration (ECF No. 11), grant BJ's Motion to Dismiss (ECF No. 12), and dismiss the action without prejudice.

An appropriate order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: August 26, 2016

---

[8] As the Fourth Circuit noted:

> There may be some tension between our decision in [*Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999)]—indicating that a stay is required when the arbitration agreement "covers the matter in dispute"—and *Choice Hotels*—sanctioning dismissal "when all of the issues presented . . . are arbitrable." Our sister circuits are divided on whether a district court has discretion to dismiss rather than stay an action subject to arbitration.

*Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012).